UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **08-62080-CIV-MORENO**

HANDI-VAN, INC. and VILLAGE CAR
SERVICE, INC.,

    Plaintiffs,

vs.

BROWARD COUNTY, FLORIDA, et al.,

    Defendants.
_____/

### ORDER GRANTING DEFENDANT BROWARD COUNTY'S MOTION FOR SUMMARY JUDGMENT ON COUNTS V AND VI AND DENYING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT ON COUNTS V AND VI

    Plaintiffs, Handi-Van, Inc. and Village Car Service, Inc., provide transportation for the handicapped on behalf of Broward County, one of the Defendants. The parties disagree over the meaning of two contract provisions. Specifically, the parties dispute the proper way to calculate the per trip fare and the annual trip rate paid to Plaintiffs by Defendant Broward County ("the County"). Both Plaintiffs and the County seek summary judgment on Counts V and VI, which are claims for breach of contract.[1] In Count V, Plaintiffs claim the contract clause unambiguously entitles them to keep the $0.50 per trip fare increase, yet the County claims the clause is latently ambiguous and extrinsic evidence proves that the intent of the clause was for the County to keep the fare increase. In Count VI, Plaintiffs claim they are entitled to a 5.8% Consumer Price Index ("CPI") increase effective October 1, 2008. The County, however, claims it does not owe Plaintiffs a 5.8% CPI

---

[1] The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear Counts V and VI based on the Court's original jurisdiction found in Count I of Plaintiffs' suit alleging retaliation and discrimination in violation of 42 U.S.C. §1983 and Title VI (42 U.S.C. § 2000d, *et seq.*).

increase because the clause does not contain a CPI increase provision, and the clause should be resolved in favor of the County because it is ambiguous. For the reasons stated below, the Court GRANTS summary judgment on Counts V and VI in favor of Defendant the County.

## BACKGROUND

Under the Americans with Disabilities Act, Broward County is required to provide alternative transportation to individuals who are physically or mentally unable to use mass transit systems. These services are referred to as paratransit services. Instead of providing paratransit services with its own personnel, the County elected to contract with private entities to provide these services with companies such as Handi-Van, Inc. and Village Car Service, Inc., the Plaintiffs in this suit. Plaintiffs have provided paratransit services for the County since 1996. Following the expiration of the 2001 Contract in 2006, the parties negotiated and finally agreed to enter into a new contract for paratransit services in 2007, which would expire in 2012. (Pls.' Stmt. Mat. Facts ¶ 6.) For the first time, the 2007 Contract contained a Living Wage Ordinance requirement. Broward County's Living Wage Ordinance requires its contractors to pay their employees a living wage. (Def.'s Ex. A & B Sect. 18.22.)

## LEGAL STANDARD

Summary judgment is authorized when there is no genuine issue of material fact. Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden then shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of the case on which he will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party opposing the motion must present more than a scintilla of evidence in support of its position and it "may not rest upon the mere allegations or

denials of the adverse party's pleadings." Fed. R. Civ. P. 56(c). When the record could not support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *Matsushita Elec. Indus. Co.,v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Both parties seek summary judgment on Counts V and VI, which are state law breach of contract claims. Plaintiffs claim that the Contract clauses unambiguously entitle them to keep the $0.50 per trip fare increase and to a 5.8% CPI increase effective October 1, 2008. The threshold issue for the Court is whether the applicable contract provisions are ambiguous. Whether an ambiguity exists is a question of law for the court. *Centennial Mortgage, Inc. v. SG/SC, Ltd.*, 772 So. 2d 564, 565-66 (Fla. 1st DCA 2000) (citation and quotations omitted). Ambiguity exists when "the contract is susceptible to two different interpretations, each one which is reasonably inferred from the terms of the contract . . . ." *Miller v. Kase*, 789 So. 2d 1095, 1097 (Fla. 4th DCA 2001) (citations omitted). If there are no ambiguities, then the contract must be enforced by its plain meaning. *Anthony v. Anthony*, 949 So. 2d 226, 227 (Fla. 3d DCA 2007) (citation omitted).

## ANALYSIS

**Count V: Alleged Breach of Rider's Fare Provision**

In Count V, Plaintiffs allege that the County breached its Contract by retaining the $0.50 per trip fare increase. Specifically, Plaintiffs point to the provision contained in Exhibit F of Plaintiffs' Contracts that reads: **"The total reimbursement to the Contractor consists of a rider's fare plus the County's reimbursement portion. Rider's fare collected is retained by Contractor."** (Def.'s Ex. A & B p. 100.) (The Court will refer to this as the "Rider's Fare" provision.) Since 1996, the fare per trip for each rider was set at $2.00. Then on May 1, 2008, the County increased the fare by $0.50 for a total fare price of $2.50. Plaintiffs began to collect the new $2.50 fare from each

passenger, but the County retained the $0.50 increase for itself. Plaintiffs claim they are entitled to the $0.50 increase based on the language of the Contract, while the County claims there is a latent ambiguity because the clause is silent as to which party bears the burden of an adjustment to the rider's fare.

A latent ambiguity exists "[i]f a contract fails to specify the rights or duties of the parties under certain conditions or in certain situations, [and] the occurrence of such condition or situation reveals an insufficiency in the contract not apparent from the face of the document." *Hunt v. First Nat'l Bank of Tampa*, 381 So. 2d 1194, 1197 (Fla. 2d DCA 1980); *see also Jones v. Treasure*, 984 So. 2d 634, 637-38 (Fla. 4th DCA 2008). If the contract presents latent ambiguities, "the court may consider extrinsic matters not to vary the terms of the contract, but to explain, clarify or elucidate the ambiguous language with reference to the subject matter of the contract, the circumstances surrounding its making and the relation of the parties." *Gorman v. Kelly*, 658 So. 2d 1049, 1052 (Fla. 4th DCA 1995) (internal quotations and citation omitted).

Whether an ambiguity exists in the Rider's Fare provision is a threshold issue for the Court. Though the provision simply states that the "Rider's fare collected is retained by Contractor," the parties dispute whether this means the Contractor, here Plaintiffs, retain everything irrespective of the amount of the fare or whether the Contractor keeps the $2.00 agreed upon fare and the increase is retained by the County. Plaintiffs contend that the provision is unambiguous and it unequivocally entitles Plaintiffs to keep the entire rider's fare. To the County, however, the provision does not specify who would be entitled to an increase or a decrease of the rider's fare. The County asks two questions in an effort to expose the latent ambiguity. First, if the County increases the fare, as occurred here, who is entitled to the increase. And second, if the County decreases the fare, who is obligated to take the loss. The County asks whether it would be the contractors' compensation that

-4-

would need to be reduced.

The Rider's Fare provision fails to address which party is entitled to an adjustment in the rider's fare. This insufficiency was exposed when the County increased the rider's fare to $2.50. Therefore, the Court finds that a latent ambiguity exists because the Rider's Fare provision failed to indicate who is entitled to the fare adjustment. *See Hunt*, 381 So. 2d at 1197.

Additionally, section 10.2.1 of Plaintiffs' Contract states "COUNTY shall determine the client fare structure for each service trip. COUNTY retains the right to implement, and CONTRACTOR shall comply with, any fare adjustments deemed appropriate by COUNTY." (Def.'s Ex. A & B.) Neither party disputes that the County had the right to increase the fare. Therefore, even though the parties contemplated a fare adjustment, they failed to specify which party would benefit or be burdened by it, thereby creating a latent ambiguity in the Rider's Fare provision.

Having found the existence of a latent ambiguity, the Court is allowed to consider extrinsic evidence to "explain, clarify or elucidate" the ambiguous provision. *Gorman*, 658 So. 2d at 1052. As extrinsic evidence, the County points to the parties' behavior to prove the parties' interpretation of the clause. *See Lalow v. Codomo*, 101 So. 2d 390 (Fla. 1958) (noting that "the actions of the parties may be considered as a menas [sic] of determining the interpretation that they themselves have placed upon the contract"). The County emphasizes that before increasing the rider's fare, the County provided notice of a public hearing to discuss the proposed increase, and published an agenda stating the County's intention to use the $0.50 increase to offset the costs of paratransit providers. The County argues that despite the notice and the public hearing, Plaintiffs did not comment on neither the proposed fare increase nor on the County's intention to use the increase to reduce paratransit costs.

In fact, even after the increase went into effect and the County used the increase to reduce

paratransit costs, neither Plaintiffs nor the other paratransit providers claimed they were entitled to the $0.50 increase. It was almost eight months later, when the Plaintiffs initiated this suit, that this claim arose. The Court considers this response to the increase as evidence that Plaintiffs understood that the intent of the clause was for the County to keep any fare increase. *See Ace Elec. Supply Co. v. Terra Nova Elec., Inc.*, 288 So. 2d 544, 548 (1st DCA 1973) (noting that the court may consider the parties' actions and dealings as evidence of their interpretation of the contract when interpreting latent ambiguities). Any understanding other than the County retaining the fare increase would mean that the County could reduce the rider's fare and deprive Plaintiffs of the compensation they have received since 1996. *See id.* (quoting *Orlando Orange Groves Co. v. Hale*, 161 So. 284, 295 (Fla. 1935) (noting that the Florida Supreme Court is "committed to the doctrine that where the terms of a written contract are in any respect uncertain or doubtful and the parties thereto have by their conduct placed a construction upon the contract which is reasonable, such construction will be adopted by the court upon the principle that it is the duty of the court to give effect to the intention of the parties where it is not wholly at variance with the principles of correct legal interpretation of the terms of the contract").

In sum, the extrinsic evidence surrounding the fare increase clearly indicates the parties' intent for the County to retain the $0.50 increase. Because Plaintiffs do not dispute the evidence submitted by the County, (Hr'g Tr. 6, Mar. 3, 2010), the Court hereby GRANTS summary judgment in favor of the County and finds that the County did not breach the Trip Fare provision of the Contract.

**Count VI: Alleged Breach of Trip Rate provision**

Plaintiffs claim the County breached its Contract by failing to increase the annual rate per trip in accordance with the CPI by 5.8% on October 1, 2008, so that the increased rate for ambulatory

riders would be $29.96 and for wheelchair passengers $40.72.[2] The parties dispute the meaning of the following provision, which states:

> **Contractor shall receive an annual rate increase on October 1 of each calendar year to coincide with the annual increase in the hourly Living Wage as determined by County [Indexed to inflation using the Miami PMSA Consumer Price Index for all Urban Consumers (CPI-U) on December 31 of the previous calendar year.**

(Def's Ex. A & B p. 100.) (The Court will refer to this as the "Trip Rate" provision. The open bracket in the quoted language above is how the text appears in the Contract between Plaintiffs and the County.)  The parties disagree over the proper way to determine the amount of the trip rate increase, but agree that the increase is to occur on October 1st. (Pls.' Stmt Material Facts ¶ 16.) Plaintiffs contend that they are entitled to an automatic annual trip rate increase equaling the increase in CPI on October 1st of each year.  Plaintiffs reject the interpretation that the amount of increase for the annual trip rate is meant to equal the same rate of increase for the living wage. Instead, Plaintiffs assert that the relationship between the living wage increase and the annual trip rate increase is about timing, and not about amount. The County, however, argues that the Contract does not contain a CPI increase clause (Decl. Busada ¶ 10) and insists that the Contract language is unclear on its face and thus contains a patent ambiguity.

Unlike a latent ambiguity, a patent ambiguity is apparent from the face of the contract. A patent ambiguity "arises from the use of defective, obscure, or insensible language." *Emergency Assoc. of Tampa, P.A. v. Sassano*, 664 So. 2d 1000, 1002 (Fla. 2d DCA 1995) (citing *Ace Elec. Supply Co.*, 288 So. 2d at 547). A patent ambiguity also differs from a latent one in that extrinsic

---

[2]Plaintiffs attach a table with the Consumer Price Index from the United States Department of Labor as evidence that the CPI increased 5.8% from 2006 to 2007. (Pls.' Memo p. 4 & Pls.' Ex. 15.)

evidence is not admissible to construe such ambiguity under Florida law "because to do so would allow a trial court to rewrite a contract with respect to a matter the parties clearly contemplated when they drew their agreement." *Emergency Assoc. of Tampa,* 664 So. 2d at 1002 (citing *Hunt,* 381 So. 2d at 1196 n.1).[3]

The Trip Rate provision contains bracketed language and a series of prepositional phrases that create a confusing clause. The Trip Rate provision contains the phrase "to coincide" as a bridge connecting the phrases "annual rate increase" and "annual increase in the hourly Living Wage." To Plaintiffs, the term "coincide" refers to the timing of the payment so that the annual trip rate increase is to occur at the same time as the annual increase of the living wage. (Pls.' Reply p. 3 n.2.) Although Webster's dictionary's definition of "coincide" is consistent with Plaintiffs' position, Webster's also defines the word "coincide" as the verb "to be identical or correspond in nature, character or function: to be in harmony," which supports the County's position that an increase in

---

[3]At oral argument, the County referred to a split of authority in Florida over whether courts should consider extrinsic evidence when the contract contains a patent ambiguity, but did not cite to any case law to support this proposition. (Hr'g Tr. 10, Mar. 3, 2010.) Although some courts have expressed dissatisfaction with the patent and latent ambiguity distinctions, *Emergency Assoc. of Tampa* makes it clear that extrinsic evidence is not permissible when a contract contains a patent ambiguity. 664 So. 2d at 1003 n.4. *Emergency Assoc. of Tampa*, states,

> We noted in *Crown* the existence of some dissatisfaction among the courts with the latent ambiguity-patent ambiguity dichotomy and agreed with the comments of *Royal Continental Hotels, Inc. v. Broward Vending, Inc.*, 404 So. 2d 782, 784 (Fla. 4th DCA 1981), that parol evidence should be admissible 'irrespective of any technical classification of the type of ambiguity present.' *Crown Management Corp. v. Goodman*, 452 So. 2d 49, 52 (Fla. 2d DCA 1984). **However we continued to 'adhere to the distinction inasmuch as the rule is still in existence.'**

*Id.* (citing *First Guar. Corp. v. Palmer Bank & Trust Co.*, 405 So. 2d 186 (Fla. 2d DCA 1981) (emphasis added).

the living wage triggers an increase in the annual trip rate by the same percentage. *Webster's Third New International Dictionary* 441 (1981, Philip Babcock Gove). Therefore, the Court finds that the use of the word "coincide" is ambiguous because it could be used to support either party's interpretation, and thus, does not aid in resolving the provision's meaning.

Based on the Trip Rate provision's defective condition, which is apparent on the face of the clause, the Court finds the clause patently ambiguous. Without considering parol evidence, the Court will resolve the dispute by reviewing the plain language of the contract, which is the "best evidence" of the parties' intention. *Republic Servs., Inc. v. Calabrese*, 939 So. 2d 225, 226 (Fla. 5th DCA 2006) (citation omitted). To support Plaintiffs' contention that the annual trip rate increase is tied to the CPI, Plaintiffs argue that the bracketed phrase modifies the term "annual rate increase" and not "annual increase in the hourly Living Wage." The Court disagrees and finds that the phrase "annual increase in the hourly Living Wage" is modified by the bracketed phrase. The living wage language is directly followed by "as determined by County" and preceded by the bracketed phrase. The plain reading of these clauses means that the bracketed language dictates the hourly living increase and not the annual rate increase.

Further, Plaintiffs insists the Trip Rate provision is a simple automatic CPI increase clause entitling them to an increase every year. Yet the phrase "as determined by County" defeats Plaintiffs' interpretation that the CPI annual rate increase is automatic. Plaintiffs' interpretation would render the phrase "living wage as determined by the County" superfluous. It is better to arrive at an interpretation "that gives a reasonable meaning to all parts of the contract" than to give an interpretation "that leaves portions meaningless." *Maccaferri Gabions, Inc. v. Dynateria Inc.*, 91 F.3d 1431, 1439 (11th Cir.1996) (citations and quotations omitted). If Plaintiffs' CPI increase interpretation was true, then there would be no need to mention "living wage" in the provision.

The County highlights other provisions in the agreement to shed light on the meaning of the Trip Rate provision. *See City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) (noting that court should "read provisions of a contract harmoniously in order to give effect to all portions") (citations omitted). No other section in the Contract addresses an annual trip rate increase, but section 18.22 of the Contract directly refers to a living wage requirement that is determined by the Living Wage Ordinance. Section 18.22 requires Plaintiffs to pay all of their employees a specified minimum living wage as required by the Living Wage Ordinance. (Def.'s Ex. A & B.) The County argues that reading section 18.22 and the Trip Rate provision together, indicates that an increase in the living wage triggers an annual trip rate increase meant to facilitate Plaintiffs with the increased labor costs. To the County, the meaning of the Trip Rate provision is to increase trip rates for Plaintiffs by the same percentage that Plaintiffs are obligated to increase workers' compensation. (Decl. Busada ¶ 10.) The County's position, and this Court's conclusion, that the Trip Rate provision does not contain a CPI annual rate increase, is supported by the rules of construction. *See Paladyne Corp. v. Weindruch*, 867 So. 2d 630, 633 (Fla. 5th DCA 2004) (applying the "time-honored rule of construction" that '[w]here the contract is susceptible to an interpretation that gives effect to all of its provisions, the court should select that interpretation over an alternative interpretation that relies on negation of some of the contractual provisions') (citations omitted); *see also Republic Servs., Inc.*, 939 So. 2d at 226 (noting that "[t]he intention of the parties generally governs the interpretation of contracts") (citations omitted).

The rules of construction clearly favor the County's interpretation. Therefore the Court finds that the annual trip rate will be increased by the same percentage as the living wage increase. The living wage increase will be determined, as stated in the Contract, according to the County's Living Wage Ordinance. (Def.'s Ex. A & B Sect. 18.22.) Summary Judgment is hereby GRANTED in

favor of the County and the Court finds that the County did not breach the Trip Rate provision.

## CONCLUSION

As to Count V, the Court finds that the Rider's Fare provision contains a latent ambiguity and, therefore, the Court may consider extrinsic evidence to resolve the ambiguity. Based on the undisputed extrinsic evidence presented, the parties clearly intended for the County to retain the $0.50 fare increase. Thus the County did not breach the Trip Fare provision.

As to Count VI, the Court holds that the Trip Rate provision is patently ambiguous and the rules of contract construction lead the Court to conclude that the annual trip rate will be increased by the same percentage as the living wage increase. Hence, the Court finds that the County did not breach the Trip Rate provision. For the reasons stated above, it is

**ADJUDGED** that Defendant's Motion for Summary Judgment as to Counts V and VI **(D.E. No. 40)**, filed on **August 13, 2009** is hereby GRANTED and Plaintiffs' Motion for Summary Judgment on Counts V and VI **(D.E. No.34 )**, filed on **July 22, 2009** is hereby DENIED.

DONE AND ORDERED in Chambers at Miami, Florida, this __ day of March, 2010.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record