UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
Miami Division

Case Number: **08-62080-CIV-MORENO**

HANDI-VAN, INC. and VILLAGE CAR
SERVICE, INC.,

    Plaintiffs,

vs.

BROWARD COUNTY, FLORIDA, *et al.*,

    Defendants.
_____/

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO COUNT I AND ORDER REMANDING CASE AS TO COUNT IV

Plaintiffs, Handi-Van, Inc. and Village Car Service, Inc., sued Defendants, Broward County, Florida, its elected commissioners, Ilene Lieberman, Kristin Jacobs, Lois Wexler, Sue Gunzburger, Stacy Ritter, Ken Keechl, John E. Rodstrom, Jr., Diana Wasserman-Rubin, Josephus Eggelletion, Jr., and Marcia Young a staff member, alleging discrimination and retaliation in violation of Title VI of the Civil Rights Act of 1964, as Count I. Defendants have provided legitimate non-discriminatory reasons for not awarding Plaintiffs the paratransit contracts and non-retaliatory reasons for terminating Plaintiffs' contracts. Plaintiffs have not met their burden to demonstrate that those reasons were pretextual. Plaintiffs' failure to produce weaknesses or inconsistencies in the legitimate reasons offered by Defendants dictate that the Court GRANT summary judgment as to Count I in favor of Defendants. Simply put, Broward County and its elected officials faced with incredible financial burdens, as many other local and state governments in this day and age, made a cost saving decision unrelated to discrimination or retaliation. The Court declines to exercise

supplemental jurisdiction pursuant to 28 U.S.C. §1367 as to Count IV, which is a state law claim for wrongful termination.

## BACKGROUND

Under the Americans with Disabilities Act, Broward County is required to provide alternative transportation to individuals who are physically or mentally unable to use mass transit systems. These services are referred to as paratransit services. Instead of providing paratransit services with its own personnel, Broward County elected to contract with private entities to provide these services to the public. Plaintiffs, Handi-Van, Inc. and Village Car Service, Inc., are two such companies who contracted with the County.

In 1996, the County entered into five-year paratransit contracts with multiple providers, including Plaintiffs, and in 2001 the County signed a second set of five-year contracts with multiple providers, including Plaintiffs. The 2001 contracts had an original expiration date of December 31, 2006, but were extended several times. As explained below, after the 2001 contracts expired, Plaintiffs were awarded a contract in February 2008, with an effective date of July 1, 2007, referred to as the "2007 contract." Later, in 2008, a new bid solicitation process began for a 2009 contract, referred to as the "2009 contract." Plaintiffs applied for the 2009 contract, but were not awarded it.

### The "2007 Contract"

In April 2006, the County, in anticipation of the paratransit contracts expiring at the end of 2006, began a bid solicitation process for the 2007 contracts. In the bid solicitation, the County required entities to be certified Disadvantaged Business Enterprises ("DBE"). Generally speaking, to qualify as a DBE, the owner must be a citizen of the U.S., a woman or racial or ethnic minority,

who is socially and economically disadvantaged. *See* 49 C.F.R. § 26.1 *et seq.* Each individual owner of a firm applying to participate as a DBE is required to certify that she has a personal net worth that does not exceed $750,000.

The contracts that were set to expire at the end of 2006 continued to be extended up until February 2008 when Plaintiffs' new contracts were approved. Before obtaining approval, Plaintiffs were required to satisfy the DBE requirements, or alternatively to meet the "good faith" exception under 49 C.F.R. § 26.53. Skeptical over staff members' determination that Plaintiffs had not satisfied the "good faith" exception, Commissioners in the June 19, 2007 meeting, voted to extend Plaintiffs' contracts until November 31, 2007. (D.E. 61-2 at 10,14,18.) Commissioners voted to extend the contracts to allow time for the County Attorney to obtain guidance from the U.S. Department of Transportation ("USDOT") on whether Plaintiffs had satisfied the good faith exception.

Then, on October 30, 2007, Defendants learned that the USDOT did not require DBE goals in the paratransit contracts because federal funding was not being used for the paratransit program. Defendants subsequently removed the DBE requirements and thereby eliminated the good faith exception hurdle Plaintiffs were encountering. Plaintiffs' contracts were further extended to allow time for negotiations over proper vehicle inspections to be completed. Finally, at the February 21, 2008 meeting, Plaintiffs were awarded the 2007 contracts for paratransit services. Up until then, Plaintiffs were being paid at rates from the 2001 contracts. Once the County awarded Plaintiffs the 2007 contract, Plaintiffs were compensated retroactively for the rate differential between the 2001 contracts and the 2007 contracts and were paid the full amount they would have been paid had the new contracts not been delayed. (D.E. 27-10 ¶6.)

### The "2009 Contract"

On February 5, 2008, the Commissioners voted to terminate all nine of the paratransit contracts. At that meeting, Commissioners expressed concerns over the costly paratransit contracts and directed staff members to find more cost effective methods of providing the federally-mandated paratransit programs. This led the County to issue an invitation for bids in May 2009. Initially, Defendants included goals to contract with firms certified as a Community Disadvantage Business Enterprise ("CDBE") and a Small Business Enterprise ("SBE") in the invitation for bids for the 2009 contracts. These goals promote awarding County contracts to small businesses that operate in Broward County. Defendants later removed the CDBE and SBE goals from the final bids. Plaintiffs submitted bids for the 2009 contracts, but did not receive a contract award. Instead in September 2009, Defendants awarded the 2009 contracts to the five lowest-cost responsive bidders.

### ANALYSIS

Summary judgment is authorized when there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). Then the burden shifts to the party opposing the motion, who must set forth specific facts and establish the essential elements of the case on which he will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). The party opposing the motion must present more than a scintilla of evidence in support of its position and it "may not rest upon the mere allegations or denials of the adverse party's pleadings." Fed. R. Civ. P. 56(c). Rule 56(e) mandates that a party moved against respond with affidavits, depositions, or otherwise to reflect that there are material facts which must be presented to a jury for resolution. *See Adickes*, 398 U.S. at 159-61.

When the record cannot support a finding by the trier of fact for the non-movant, there is no genuine issue for trial and summary judgment is appropriate. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Count I of Plaintiffs' complaint alleges two causes of action under Title VI. First, Plaintffs claim Defendants discriminated against Plaintiffs in the bid for the 2007 contracts -- a contract that was awarded and both sides performed. Second, Plaintiffs assert Defendants retaliated against Plaintiffs for terminating the 2007 contracts.[1] The Court will address Plaintiffs' discrimination claim and retaliation claim separately. The Court declines to exercise supplemental jurisdiction on Count IV, for wrongful termination, the last remaining count. Accordingly, the Court remands Count IV to state court.

### Count I: Part A: Discrimination claim

Plaintiffs' discrimination claim is brought under Title 42 U.S.C. § 2000d, which states: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." Plaintiffs allege that Defendants used racial, ethnic, and sexual criteria in soliciting and awarding contracts for paratransit services that violate the provisions of Title VI of the Civil Rights Act of 1964.

The Court will analyze Plaintiffs' Title VI claim under the *McDonnell Douglas Corp. v.*

---

[1] Plaintiffs included a 42 U.S.C. § 1983 claim in Count I, but did not identify the underlying basis for deprivation, and therefore, there is no discernible § 1983 claim in Count I for the Court to resolve. Additionally, to the extent that Plaintiffs' § 1983 claim in Count I was tied to their § 1983 due process claim in Count II, the Court's Order Granting in Part the Motion to Dismiss filed on May 18, 2009, already dismissed that § 1983 due process claim. Moreover, neither party addressed the § 1983 claim in the motions for summary judgment.

*Green*, 411 U.S. 792 (1973), burden shifting framework. *See Camellia Therapeutic Foster Agency, LLC v. Ala. Dep't of Human Res.*, No. 2:06cv735-MHT, 2007 WL 3287342, at *4 (M.D. Ala. Nov. 5, 2007) (citations omitted) (using the burden shifting framework under a Title VI discrimination claim dealing with awarding contracts). Under the *McDonnell Douglas* framework, when the defendant moves for summary judgment against the plaintiff, the plaintiff bears the burden of establishing a *prima facie* case of discrimination. *See Springer v. Convergys Customer Mgmt. Group Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007). "Once the plaintiff has made out the elements of the *prima facie* case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action." *Id.* (citation omitted). "If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual." *Id.* (citation omitted).

To establish a *prima facie* case under Title VI in the awarding of contracts, a plaintiff must show that "(1) it is within the protected class; (2) it was qualified to receive a contract; (3) its proposal for a contract was rejected; and (4) the department awarded contracts to non-members of the class with similar qualifications." *Camellia*, 2007 WL 3287342, at *4 (M.D. Ala. Nov. 5, 2007) *4) (citation omitted).

Although Plaintiffs' allegations of discrimination are alleged in broad strokes, the Court isolates two incidents where Plaintiffs allege that Defendants discriminated against them in favor of minority bidders. The first incident was when Defendants included DBE requirements in the solicitation of bids in April 2006 in preparation for the 2007 contracts. Defendants, however, eventually awarded Plaintiffs the 2007 contracts. Before awarding Plaintiffs the contracts, Defendants removed the DBE requirements upon receiving clarification from the USDOT that the DBE requirements were unnecessary. Therefore, because Plaintiffs were awarded the contracts, the

Court finds Plaintiffs have failed to establish their *prima facie* case as to this alleged incident of discrimination. Indeed, Plaintiffs were paid the rate differential between the 2001 contracts and the 2007 contracts upon entering the 2007 contracts.

The second incident was when Defendants initially included goals to contract with firms certified as a Community Disadvantage Business Enterprise ("CDBE") and a Small Business Enterprise ("SBE") in procurement documents for the 2009 contract. Plaintiffs bid for the 2009 contracts, and Defendants did not award the contracts to Plaintiffs, but instead to the five lowest-cost responsive bidders.

As to this component of the discrimination claim, the Court assumes Plaintiffs satisfy the *prima facie* case for discrimination based on the 2009 contracts, because unlike the 2007 contracts, Plaintiffs were not awarded the 2009 contracts. However, the Court remains skeptical that the *prima facie* case is satisfied because Plaintiffs have not established that they are members of a protected class. The Court is also doubtful that Plaintiffs could establish prongs two and four of the *prima facie* case because Plaintiffs were not the lowest bidder and did not have similar qualifications to the providers who were awarded the contracts. Nonetheless, assuming Plaintiffs can establish their *prima facie* case, the burden shifts to Defendants to prove a legitimate non-discriminatory reason for denying Plaintiffs the paratransit contracts.

Defendants' reason for not awarding Plaintiffs the 2009 contracts was because they bid too high. The record evidence indeed shows Plaintiffs were among the highest of bidders for the 2009 contracts. Defendants explain that they decided to re-solicit bids for paratransit services because of the County's budget crisis. As state above, on February 5, 2008, the Commissioners voted to terminate all nine paratransit contracts with the goal of finding paratransit providers to provide

services at a lower rate. For this re-solicited bid, Defendants decided to use a different model called the virtual fleet service model, instead of assigning customers to specific paratransit companies, which is costly. In the initial invitation for bids, Defendants included the CDBE and SBE goals. Defendants later removed these goals from the final invitation for bids, which was issued on May 26, 2009. Twenty-four companies submitted sealed bids, which were opened July 15, 2009. Village Car Service submitted the highest bid and Handi-Van submitted the fourth highest bid. (D.E. 65-6.) Village Car Service submitted a blended rate bid of $41.41 and Handi-Van submitted two blended rate bids, one for $35.73 and the other for $32.11. *Id.* On September 22, 2009, the County Commission awarded new paratransit contracts to the five lowest-cost responsive bidders and did not award the paratransit contracts to Plaintiffs. The blended rates submitted by those companies who were awarded the contracts were $18.35, $20.91, $20.07, $22.26, and $23.69, all significantly lower than Plaintiffs' bids. *Id.* In sum, the record evidence supports Defendants' position that it awarded contracts based on price and not to further discriminatory practices.

Having found that Defendants met their burden of producing a legitimate non-discriminatory reason for awarding the contracts, the burden reverts to Plaintiffs to demonstrate that Defendants' reasons are pretexual. To demonstrate that Defendants' legitimate non-discriminatory reasons are pretextual, Plaintiffs must show that such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" exist in Defendants' reasons that a reasonable factfinder could not find them credible. *Jackson v. State of Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005) (internal quotation marks and citation omitted).

Plaintiffs first argue that Defendants' initial inclusion of the CDBE and the SBE goals in the bids were disguises used to be able to discriminate in favor of minority firms because only minority

firms could have met the goals. Defendants explain that the goals are completely race-neutral, gender-neutral, and ethnicity-neutral. (Atkinson Decl. ¶5, June 22, 2009.) Even so, at the time Defendants considered these goals, their databases reveal that four of the eight potential firms identified for CDBE or SBE participation were non-minority firms. (Atkinson Decl. ¶9, Sept. 17, 2009.) This belies Plaintiffs' contention that Defendants included these goals to favor minority firms over non-minority firms.

Plaintiffs also argue that the initial inclusion of these goals was an attempt to favor M&T Transportation, which is owned by an African American. Yet Defendants did not award the contract to M&T Transportation because they bid too high and submitted two blended rate bids in the amount of $24.79 and $24.86. (Busada Decl. ¶11 & D.E. 65-6.) Nevertheless, these goals were removed from the final invitation for bids undermining Plaintiffs' pretexual claim. Even if the County had left the SBE and CDBE goals in the invitations for bids, there is no record evidence to suggest these goals operate to discriminate. To qualify as an SBE, the entity must be independently owned and operated, employ less than 25 full-time employees, and cannot exceed certain limits in its annual gross sales. (Broward County, Fla., Ord. No. 2004-07 §20.277(gg)(2004)). To qualify as a CDBE, the firm must be a for-profit small business entity with a continuous operating presence in Broward County. The CDBE owner's personal net worth cannot exceed certain limits and the firm's average annual gross revenue cannot exceed certain limits. (Broward County, Fla., Ord. No. 2007-32 §1-81.1(6)(2007)). In fact, the CDBE Act of 2007 explicitly forbids discriminatory actions and states that "no person or entity shall be denied CDBE certification on the basis of race, color, sex, religion, national origin, disability, age, marital status, political affiliation, sexual orientation, or familial status." (Broward County, Fla., Ord. No. 2007-32 §1-81.1(10)(c)(2007)). In short, both goals

promote small local businesses and do not include any racial or gender preferences. Plaintiffs have thus failed to present evidence where a factfinder could reasonably conclude that Defendants did not award Plaintiffs the paratransit contracts because of discriminatory motive.

### Count I: Part B: Retaliation claim

Plaintiffs claim Defendants retaliated against them when the Commissioners voted on February 5, 2008 to terminate Plaintiffs' paratransit contracts. Plaintiffs assert their retaliation claim under Title VI of the Civil Rights Act of 1964. The Supreme Court has held that the anti-discrimination language in Title VI is parallel to the anti-discrimination clause found in Title IX, which creates a cause of action for retaliation under Title IX. *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 173-75 (2005); ("Retaliation against a person because that person has complained of sex discrimination is another form of intentional sex discrimination encompassed by Title IX's private cause of action."); *see also Peters v. Jenny*, 327 F.3d 307, 314-19 (4th Cir. 2003) (finding a cause of action for retaliation under Title VI). The Court therefore finds that "retaliation likely exists under Title VI because (1) Title IX was patterned after Title VI, (2) the Supreme Court held that retaliation is a form of intentional discrimination, and (3) Title VI prohibits intentional discrimination." *Mayfield v. Hart County Sch. Dist.*, No. 3:04-cv-09, 2006 WL 1652299, at *9-10 (M.D. Ga. June 9, 2006) (citations omitted); *see also Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003) (noting that it construes "Titles VI and IX *in pari materia* . . . .").

The Court will employ the *McDonnell Douglas* burden shifting framework to analyze Plaintiffs' retaliation claim. *See Peters*, 327 F.3d at 321 n.15; *see also Mayfield*, 2006 WL 1652299 at *10 (applying the Title VII analytical framework to a Title VI retaliation claim). For a retaliation

case, plaintiff must establish a *prima facie* case and show that "(1) he engaged in statutorily protected expression; (2) he suffered an adverse [] action; and (3) there is some causal relation between the two events." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (citations and internal quotation omitted). Defendants stipulate that Plaintiffs have stated a *prima facie* case of retaliation by alleging that the County Commission retaliated against Plaintiffs when they voted to authorize termination of the paratransit contracts on February 5, 2008. Specifically, Defendants concede that Plaintiffs' suit in January 2008, which Plaintiffs eventually dismissed, constitutes protected activity, and that the County Commission's direction to terminate the paratransit contracts constitutes adverse action. The causal connection between the two is established by the temporal proximity of Plaintiffs' suit to the County Commission's vote. As a legitimate, non-discriminatory reason, Defendants explain that they terminated the paratransit contracts on February 5, 2008 to cut costs by restructuring its expensive paratransit services. Therefore, the retaliation claim turns on whether the reason offered by Defendants is pretextual. "A reason is not pretext for discrimination unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Brooks v. County Comm'n of Jefferson County, Ala.*, 446 F.3d 1160, 1163 (11th Cir. 2006) (citation and internal quotations omitted).

To demonstrate pretext, Plaintiffs allege without any support, that the only contracts terminated for convenience were paratransit contracts. This argument fails because Plaintiffs, as the parties with the burden to demonstrate pretext, cannot rely on mere allegations. Instead, Plaintiffs must offer evidence or sworn testimony to support their claim. Nonetheless, even if the paratransit contracts were the only ones terminated, that alone does not suggest pretext. Plaintiffs must show both that Defendants terminated Plaintiffs' contracts in retaliation *and* that the contracts were not

terminated for financial reasons. *See Brooks,* 446 F.3d at 1163.

Moreover, Plaintiffs' contracts were not the only paratransit contracts terminated, all nine of the paratransit contracts were terminated and there is no evidence that the other paratransit providers engaged in protected activity. Indeed, in an unanimous decision the Commissioners voted to terminate all nine of the paratransit contracts. (Lieberman Decl. ¶ 3; Wexler Decl. ¶3; Jacobs Decl. ¶3; Gunzburger Decl. ¶ 3; Wasserman-Rubin Decl. ¶ 3; Eggelletion Decl. ¶ 3; Rodstrom, Jr. ¶ 3.)

Additionally, to demonstrate pretext, Plaintiffs argue that Defendants are spending money on non-essential items, specifically by voting to spend $800,000 on new restrooms in parks and spending 2% of its expenditures on public art. Yet Plaintiffs fail to explain what makes the new restrooms "non-essential." Plaintiffs fail to connect how spending $800,000 for new restrooms in four parks, a decision that was made over a year after the termination vote (Plaintiffs' Ex. 101), implies Defendants did not terminate the contracts for budgetary reasons. (Plaintiffs' Ex. 101.) Further, the Court is equally unpersuaded that spending money for public art in compliance with an ordinance is evidence of pretext. *See* Broward County, Fla., Ord. No. 81-67 § 1-88.1(1981) (stating that appropriations for county capital improvement projects shall include an amount equal to 2% of the total eligible construction costs to be used for art). Thus, because Plaintiffs failed to establish a connection between the decision to spend money on restrooms and public art as evidence of pretext, this argument is without merit.

Notably, the paratransit program from July 2007 to June 2008 cost the County $28,945,745, which is an increase of nearly $10 million over the prior year. (Walton Decl. ¶9) Moreover, Handi-Van's contract entered into on February 26, 2008 had an estimated annual cost of $4,150,000, including a per-trip rate adjustment retroactive to July 1, 2007 at an estimated cost of $150,000.

(Plaintiffs' Ex. 90.) And Village Car Service, Inc.'s contract entered into on February 26, 2008 had an estimated annual cost of $5,700,000 with a per-trip rate adjustment at an estimated cost of $400,000. *Id.* The price tags of these services only further support Defendants' reason for terminating the paratransit contracts as an effort to cut costs.

Plaintiffs also point to emails where County staff allegedly made comments that Defendants terminated their contracts in retaliation. Yet, to succeed under a Title VI claim, the test is whether the decision-maker, not other employees, acted in retaliation. *See Sirpal v. Univ. of Miami*, 684 F.Supp. 2d 1349, 1358 n.1 (S.D. Fla. 2010) (explaining that the issue under a Title VI discrimination case is whether the decision-maker acted with discriminatory intent) (citing *Elston v. Talladega County Bd. of Educ.*, 997 F.2d 1394, 1406 (11th Cir. 1993); *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1249 (11th Cir. 1998)). Plaintiffs do not provide evidence that the County staff members made the decision to terminate the contracts, and so, staff members' comments are not relevant to the Court's analysis.

After the vote to terminate the contracts, County staff member Andrea Busada, met with seven of the nine paratransit providers. Ms. Busada explains that the meeting was held to determine whether the seven other providers could absorb the trips of Handi-Van, Inc. and Village Car Service, Inc., in the event they did not execute their contracts later that month. (Busada Decl. ¶ 21.) Plaintiffs claim this was an attempt to eliminate Plaintiffs' services, but again fail to connect how this meeting held after the vote to terminate undermines Defendants' reason for terminating the contracts. Mere allegations of pretext or denials of Defendants' pleadings are insufficient because they fail to demonstrate any genuine issue of fact for trial. *See* Fed. R. Civ. P. 56(c).

Indeed, Plaintiffs have not provided any statements to refute that the decision to terminate was based on budgetary reasons. Instead, the record evidence shows that Commissioner Rodstrom,

at the February 5, 2008 meeting said, "We've got to come up with $100,000,000, and I think right now is a good place to start." (D.E. No. 61-4 at 17.) Commissioner Rodstrom also stated he would like to terminate the contracts under the termination for convenience clause and have staff prepare recommendations on how to save money with a new contract. *Id.* This directive, to research new alternative ways of providing paratransit services at a lower cost, bolsters Defendants explanation that cost is what drove the Commissioners' decision to terminate the contracts. In addition, Commissioners' sworn statements indicate that "[t]he direction to terminate the contracts was purely for financial reasons." And that the "[t]he County expects to save millions of dollars annually by terminating the existing contracts and conducting a new competitive solicitation for paratransit services." (Lieberman Decl. ¶ 5; Wexler Decl. ¶5; Jacobs Decl. ¶5; Gunzburger Decl. ¶ 5; Wasserman-Rubin Decl. ¶ 5; Eggelletion Decl. ¶ 5; Rodstrom, Jr. ¶ 5.) Accordingly, Plaintiffs have failed to demonstrate that Defendants' legitimate reasons for terminating Plaintiffs' contracts were pretextual. It is therefore,

**ADJUDGED** that Defendants' motion for summary judgment as to Count I is GRANTED. Additionally, Count IV for wrongful termination is remanded to state court. The Clerk of Court is hereby directed to take all necessary steps and procedures to effect the expeditious remand of the above-styled action.

DONE AND ORDERED in Chambers at Miami, Florida, this 11 day of June, 2010.

_____
FEDERICO A. MORENO
CHIEF UNITED STATES DISTRICT JUDGE

Copies provided to:
Counsel of Record